[No. 3,750.]

## THE CITY OF STOCKTON *v.* C. M. CREANOR.

BID FOR GRADING A STREET IN A CITY.—If an ordinance of a city, providing for grading a street containing several blocks, requires that bidders shall bid on each block separately, a bid to grade the entire street at so much per cubic yard is an error which enables a lot owner to defeat the collection of an assessment.

BIDS AND CONTRACTS FOR GRADING STREETS. — If the charter of a city authorizes the Council to cause the streets to be graded and to let contracts for that purpose, and provides that the Council may reject all bids, a committee of the Council cannot accept a bid or award a contract to grade a street.

DEFENSE IN ACTION TO RECOVER STREET ASSESSMENT.—In an action to recover an assessment levied on a lot for grading a street in a city, the lot owner may show and rely on as a defense any substantial error in the proceedings which could not have been remedied by an appeal to the Council.

IDEM. — A provision in a city charter which declares that the delinquent tax list on an assessment for grading a street shall be evidence to prove "that all the forms of law in relation to the levy and assessment had been complied with" does not make it conclusive evidence, but the lot owner may go behind the same and show a substantial error in the proceedings.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

This action was brought to recover a street assessment in the City of Stockton. In October, 1869, the Common Council passed Ordinance No. Seventy-nine, which provided that Fremont street should be graded from Steamboat levee to Tule street, a distance of nine blocks; and further provided that the Street Committee should advertise for bids for the grading, requiring that each block should be bid on separately. The committee advertised for bids in accordance with the ordinance, and in response thereto Henry Myers presented a bid, in which he proposed to " grade with earth, from Hunter to El Dorado streets, Steamboat levee; also, all the blocks on Fremont street to Tule street, as per your advertisement, for fifty cents per cubic yard." The committee afterwards reported to the Council that they had accepted Myers' bid for all the blocks but one, and awarded the contract for grading them to him. The report was adopted by the Council. Myers did the grading under the contract, and his work was accepted by the Council. The defendant is the owner of certain property assessed for the expenses of the work, and having refused to pay the assessment, this action was brought to collect the amount.

Judgment was rendered for the defendant, and the plaintiff appealed.

The other facts are stated in the opinion.

*Byers & Elliott*, for Appellant.

The bid of Myers is not a bid for the whole work in a lump. It is equivalent to an offer to grade each block at so much per foot. There is no particular direction in the charter in regard to the acceptance of bids for street work, but the ordinance provides that the Street Committee should advertise for bids, but does not direct to whom the bids shall be presented. It is fair construction to hold that if the bids were to be presented to the Council the Clerk would have been directed to advertise. And if the bids were to be passed upon by the Council it is not presumable that the committee would be required to advertise for bids, but rather the Clerk. In any event the action of the Street Committee was reported to the Council, and the action ratified by subsequently causing the assessment and equalization. The acceptance of the bids by the committee did not prevent the rejection of the bids by the Council.

The statute provides that all persons feeling aggrieved or having any objection to the correctness or legality of the assessment, shall specifically make known the cause of their objections. It seems that the legality of the assessment may be determined by the Board of Equalization, and their decision is final. (Stats. 1869–70, p. 608, Sec. 55.)

If the assessment was legal, and no objection having been made, the property owner is concluded. It is the evident intention of the law to authorize the Board to determine all questions which might arise concerning the correctness of all steps taken to grade the street.

*D. S. Terry*, for Respondent.

The liability of owners of lots for assessments for improving streets depends on the statute, and only inures after the steps required by the statute have been taken. (*Blanchard v. Beideman*, 18 Cal. 261.)

The rule is universal, that in order to charge property for taxes, whether for local improvements or public revenue, the statute on the subject must be strictly followed. (*Taylor* v. *Donner*, 31 Cal. 480; *Haskell* v. *Bartlett*, 34 id. 281; *Smith* v. *Cofran*, id. 316; *Dougherty* v. *Hitchcock*, 35 id. 512.)

The charter confers no authority on a committee to accept bids or amend contracts.

These proceedings were not in accordance with the ordinance, and created no charge on the lots. (*Dougherty* v. *Hitchcock*, 35 Cal. 523.)

The acts we complain of were beyond the jurisdiction of the Assessor or Board of Equalization, and as to those acts we are not concluded, because such an appeal would have afforded us no remedy. (*Dougherty* v. *Hitchcock*, 35 Cal. 324, 326; *Hewes* v. *Reis*, 40 id. 263.)


By the COURT:

The bid sent in by Myers was a bid for the entire work, and not for separate blocks, as required by the ordinance. No express contract was entered into between the city and Myers, but the Street Committee accepted his bid for the grading of the street along eight out of the nine blocks mentioned in the ordinance. The city charter authorizes the Common Council to cause the streets to be graded, and for that purpose to let contracts, etc. But this authority is not conferred upon a committee of the Common Council, either by the charter or by ordinance. Even if it be conceded that such authority may be delegated by the Common Council, the provision of the charter that the Common Council may reject all bids, prohibits by implication the exercise by a committee of the power to accept a bid and award a contract. We are of the opinion that the bid must be accepted, and the contract awarded by the Common Council.

These irregularities in respect to the bid and the award of the contract are not cured by the provisions of section fifty-five of the Act of 1870, to incorporate the City of Stockton (Stats. 1869–70, p. 608); for the decision of the Board of Equalization is final and conclusive only in respect to "all errors and irregularities which said Board could have remedied and avoided" on an appeal to the Board, as in that section provided. The Board could not then correct either of those irregularities. Nor are they corrected by the provisions of section forty of that Act, respecting the delinquent list; for that section provides that such list shall be *evidence* of the matters therein recited; but as it is not declared to be *conclusive* evidence of those matters, it does not preclude the lot owner from showing and relying upon a substantial error or irregularity in the prior proceedings.

Judgment affirmed.